UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ORLANDO SIMON                                    CIVIL ACTION

VERSUS                                           NO: 20-3320

BERTUCCI CONTRACTING                             SECTION: "J"(3)
COMPANY, LLC, ET AL.

## ORDER & REASONS

Before the Court is a *Motion for Summary Judgment* **(Rec. Doc. 21)** filed by

Defendant, Crosby Tugs, LLC ("Crosby Tugs"), and an opposition (Rec. Doc. 26) filed

by Plaintiff, Orlando Simon. Having considered the motion and legal memorandum,

the record, and the applicable law, the Court finds that the motion should be granted.

## FACTS AND PROCEDURAL BACKGROUND

This suit arises from an incident aboard the AB4 Spud Barge ("the Spud

Barge") on December 7, 2019. Plaintiff alleges that he was injured while working

aboard the Spud Barge when attempting to pull a pin from the Spud Barge's rear

spud. Plaintiff filed suit against Bertucci Contracting Company LLC ("Bertucci) as

his employer and owner of the Spud Barge. Plaintiff alleges that Bertucci (1) as his

Jones Act employer, violated its duty to provide him with a safe place to work and a

seaworthy vessel; (2) as owner of the Spud Barge, is liable to him due to its negligence

and the unseaworthiness of the Spud Barge; and (3) as his employer, for maintenance

and cure benefits. Plaintiff claims that Crosby Tugs is liable to him for all allegations

asserted against Bertucci because Bertucci was purchased by Crosby Tugs prior to the subject incident. Subsequently, Crosby Tugs filed the instant motion for summary judgment seeking dismissal Plaintiff's Jones Act, maintenance and cure, and unseaworthiness claims against it because Crosby Tugs is neither Plaintiff's employer nor owner of the Spud Barge.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element

of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

Crosby Tugs argues that as neither the employer of Plaintiff nor the owner of the Spud Barge, it cannot be liable for a Jones Act claim, maintenance and cure, or the alleged unseaworthiness of the Spud Barge. (Rec. Doc. 21-1, at 2). Moreover, Crosby Tugs contends that, absent exceptional circumstances, it, as the parent company of Bertucci, cannot be held liable for its subsidiary, and Plaintiff has not submitted evidence that any of these exceptional circumstances exist. (*Id.* at 4–5).

## I.   EMPLOYER/ EMPLOYEE CLAIMS

First, a Jones Act claim "requires proof of an employment relationship either with the owner of the vessel or with some other employer who assigns the worker to a task creating a vessel connection, for '[b]y the express terms of the Jones Act an employer-employee relationship is essential to recovery.'" *Guidry v. S. La. Contractors, Inc.*, 614 F.2d 447, 452 (5th Cir. 1980) (quoting S*pinks v. Chevron Oil Co.*, 507 F.2d 216, 224 (5th Cir. 1975)). Here, Plaintiff's Complaint alleges that he "was employed as an oiler with Bertucci," (Rec. Doc. 1, at 2), and, in Bertucci's Answer, it "admit[ted] that Bertucci employed [Plaintiff]," (Rec. Doc. 4, at 2–3). Additionally, in Plaintiff's deposition, he testified that he worked for Bertucci. (Rec.

Doc. 21-3, at 4). Finally, the HR Director of Crosby Tugs states in her declaration that Crosby Tugs never employed Plaintiff. (Rec. Doc. 21-4, at 1). In opposition, Plaintiff does not contend that Crosby Tugs was his employer, but, instead, he argues that his mentor, Thurman Hallum, who was assigned to instruct and oversee his job performance aboard the Spud Barge, was employed by Crosby Tugs' sister company Crosby Dredging, LLC. (Rec. Doc. 26, at 4). To support this contention, Plaintiff cites a deposition that states that "Thurman was the Crosby guy." (*Id.* at 8). Moreover, Plaintiff cites to deposition testimony that states that Hallum verbally instructed Plaintiff to go back and remove the back spud pin of the Spud Barge, and an employee-deckhand of Crosby Tugs instructed the winch operator of the Spud Barge to drop the back spud. (*Id.* at 19–21). Plaintiff asserts that it was Crosby Tug's employees who were in charge of supervising him and instructing him as he performed his duties on the Spud Barge immediately before the accident. (*Id.* at 5). Therefore, Plaintiff appears to be arguing that because employees of Crosby Tugs directed his actions that led to the accident, Crosby Tugs should be found liable for the injuries that he incurred. (*Id.*). However, this argument is more akin to a borrowed employee argument, and Plaintiff has failed to assert facts that support a finding that he was a borrowed employee of Crosby Tugs under the *Ruiz v. Shell Oil Co.*, 413 F.2d 310, 312–13 (5th Cir. 1969) factors. Accordingly, as the non-movant with the burden of proof at trial, Plaintiff had to have come forward with specific facts that show a genuine issue exists as to whether Crosby Tugs employed him. Having

4

failed to do so, the Court finds that Crosby Tugs is not liable to Plaintiff under the Jones Act.

Second, "[m]aintenance and cure is the implied right of the seaman arising from his or her employment relationship with the shipowner and is 'independent of any other source of recovery for the seaman (e.g., recovery for Jones Act claims).'" *Nichols v. Weeks Marine, Inc.*, 513 F. Supp. 2d 627, 638 (E.D. La. 2007) (quoting *Bertram v. Freeport McMoran, Inc.*, 35 F.3d 1008, 1013 (5th Cir. 1994)). Thus, "[t]he seaman's claim for maintenance and cure lies against the seaman's employer, which in this case, are the Defendants." *Id.* (citing *Caulfield v. AC & D Marine, Inc.*, 633 F.2d 1129, 1131 (5th Cir. Unit A 1981)). Here, as discussed above, Plaintiff has not come forward with specific facts that show a genuine issue exists as to whether Crosby Tugs employed him, and thus, Plaintiff has no maintenance and cure claim against Crosby Tugs.

## II.   UNSEAWORTHINESS CLAIM

Unseaworthiness is a claim under general maritime law based on the vessel owner's duty to provide a seaworthy vessel, including appurtenances, gear and equipment, reasonably fit for its intended purpose of performing offshore operations. *Phillips v. Western Co. of North America*, 953 F.2d 923, 928 (5th Cir. 1992) (citing *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1354 (5th Cir. 1988)). Therefore, "[v]essel owners are liable to seamen for injuries proximately caused by the unseaworthiness of their vessels." *Patterson v. Omega Protein, Inc.*, 26 F. Supp. 3d 544, 547 (E.D. La. 2014). Here, Plaintiff claims that the subject incident occurred on

the AB4 Spud Barge, and this barge was "under the custody and control of, owned and/or operated by defendant, Bertucci." (Rec. Doc. 1, at 2). Moreover, in Bertucci's Answer, it admits that "Bertucci owns and operates a spud barge known as the AB 4." (Rec. Doc. 4, at 2). Finally, the HR Director of Crosby Tugs states in her declaration that "Crosby Tugs was not the owner of the AB4 Spud Barge on 7 December 2019 or any other time." (Rec. Doc. 21-4, at 1). In his opposition, Plaintiff argues that the Spud Barge was preparing to be towed by the towing vessel, M/V TATUM ANN whose owner was Crosby Tugs. (Rec. Doc. 26, at 1). However, Plaintiff does not contend that the M/V/ TATUM ANN was unseaworthy or that the Spud Barge was owned by Crosby Tugs. *Cf* (*id.*). Therefore, the Court finds that Crosby Tugs was not the owner of the Spud Barge at the time of the incident, and, as such, Crosby Tugs cannot be liable for its alleged unseaworthiness.

## III.   AFFILIATED COMPANY CLAIM

A bedrock principle of corporate law is that "a parent corporation . . . is not liable" for actions taken by its subsidiaries. *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). "However, courts will apply the alter ego doctrine and hold a parent liable for the actions of its instrumentality in the name of equity when the corporate form is used as a 'sham to perpetrate a fraud.'" *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 416 (5th Cir. 2006) (*Bridas II*) (citation omitted). This alter ego determination is reserved for exceptional cases, *In re Multiponics, Inc.*, 622 F.2d 709, 724–25 (5th Cir. 1980), and the court is "concerned with reality and not form, [and with] how the corporation operated," *United States v. Jon–T Chemicals, Inc.*, 768 F.2d

6

686, 693 (5th Cir. 1985). Further, the alter ego doctrine will apply only if "(1) the owner exercised complete control over the corporation with respect to the transaction at issue and (2) such control was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 359 (5th Cir. 2003) (*Bridas I*). However, the Fifth Circuit has held that, unlike in contract cases, in tort cases, a finding of fraud is not required, "particularly where the subsidiary is undercapitalized." *Jon-T Chemicals, Inc.*, 768 F.2d at 692–93 (citing *Edwards Co. v. Monogram Indus., Inc.*, 730 F.2d 977, 982 (5th Cir. 1984); *Nelson v. Int'l Paint Co.*, 734 F.2d 1084, 1092 (5th Cir. 1984)).

The Fifth Circuit has laid out a list of non-exclusive factors for courts to use in determining whether one company dominates or controls another:

> (1) the parent and subsidiary have common stock ownership; (2) the parent and subsidiary have common directors or officers; (3) the parent and subsidiary have common business departments; (4) the parent and subsidiary file consolidated financial statements; (5) the parent finances the subsidiary; (6) the parent caused the incorporation of the subsidiary; (7) the subsidiary operated with grossly inadequate capital; (8) the parent pays salaries and other expenses of subsidiary; (9) the subsidiary receives no business except that given by the parent; (10) the parent uses the subsidiary's property as its own; (11) the daily operations of the two corporations are not kept separate; (12) the subsidiary does not observe corporate formalities.

*Oxford Capital Corp. v. United States*, 211 F.3d 280, 284 n.2 (5th Cir. 2000) (per curiam) (citation omitted). The control necessary to satisfy the first prong of the alter ego test is "not mere majority or complete stock control, but such domination of finances, policies and practices that the controlled corporation has, so to speak, no separate mind, will or existence of its own and is but a business conduit for its

principal." *Jon-T Chemicals, Inc.*, 768 F.2d at 691 (quoting *§ 43 Parent and subsidiary corporations and affiliated corporations*, 1 FLETCHER CYC. CORP. § 43 (Sept. 2021)). Notably, the Fifth Circuit has held that "one-hundred percent ownership and identity of directors and officers are, even together, an insufficient basis for applying the alter ego theory to pierce the corporate veil." *Id.* (citations omitted). Finally, although the above factors were created with a parent/ subsidiary relationship in mind, "the Fifth Circuit held that [they] may be applied by analogy to sibling corporations i.e. corporations with a common owner." *Dickson Marine Inc. v. Panalpina*, 179 F.3d 331, 338–39 (5th Cir. 1999).

Here, Crosby Tugs argues that Plaintiff's claims against it are solely based upon the contention that Crosby Tugs purchased Bertucci prior to the subject incident. (Rec. Doc. 21-1, at 4). However, Crosby Tugs contends, Plaintiff has not submitted any evidence to support the contention that Crosby Tugs should be held responsible for Bertucci's alleged liability. (*Id.* at 5). At most, Crosby Tugs admits that "Bertucci and Crosby Tugs are related but separate corporations." (Rec. Doc. 5, at 3). In opposition, Plaintiff argues that Crosby Tugs and Crosby Dredging are sister companies. (Rec. Doc. 26, at 4). To support this contention, Plaintiff asserts that Crosby Tugs and Crosby Dredging have the same domiciliary address and the same registered agent for service of process. (*Id.* at 4, 10–12). Moreover, Plaintiff avers that the fact that Hallum, an employee of Crosby Dredging, was working on a vessel being towed by Crosby Tugs, proves that Crosby Tugs and Crosby Dredging effectively blend their business together. (*Id.*). Unfortunately, the same address and registered

agent are not enough to show that Crosby Dredging and Crosby Towing can be liable for each other's actions. Accordingly, as the non-movant with the burden of proof at trial, Plaintiff had to have come forward with specific facts that show a genuine issue exists as to whether Crosby Tugs and Bertucci or Crosby Tugs and Crosby Dredging are alter egos of each other. Having failed to do so, the Court finds that Crosby Tugs is not liable to Plaintiff for the alleged acts of Bertucci and Crosby Dredging. However, Crosby Tugs remains liable for its own alleged negligence under general maritime law.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Crosby Tugs, LLC's *Motion for Summary Judgment* **(Rec. Doc. 21)** is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Jones Act, maintenance and cure, and unseaworthiness claims against Crosby Tugs, LLC are **DISMISSED WITH PREJUDICE.** The Court retains jurisdiction over Plaintiff's claim of negligence under general maritime law against Crosby Tugs.

New Orleans, Louisiana, this 6th day of September, 2022.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE